Beier, J., dissenting:
I must dissent in this case because I have not changed my mind about whether premeditation *1148 qualifies as more than a merely temporal gloss on the culpable mental state of intention. See State v. McLinn , 307 Kan. 307, 355-62, 409 P.3d 1 (2018) (Beier, J., dissenting). Premeditation is its own culpable mental state under Kansas law; it has always differed qualitatively as well as quantitatively from intent and required distinctive proof; **418 nothing about the 2011 recodification of the criminal code changed any of that. McLinn , 307 Kan. at 355-56, 360-61, 409 P.3d 1 (Beier, J., dissenting).
I would therefore hold that the district judge's inclusion of "premeditation" in instruction No. 6 as an element of first-degree murder whose existence could be defeated by proof of defendant Lindsey Blansett's psychosis was a correct statement of the law.
That much said, I do not agree with Blansett that instruction No. 6's further language limiting consideration of evidence of Blansett's mental disease or defect "only" to "determin[e] whether the defendant had the culpable mental state required to commit the crime," when given to the jury with the rest of the instructions, was confusing at the time the jury heard it. Rather, I think it reinforced an unavoidable impression the lay jury would have had to take from the instructions, read as a whole: Premeditation, in addition to intention, qualifies as an independent culpable mental state.
Instruction No. 2 told the jury simply that a conviction for first-degree murder required the State to have proved that Blansett "intentionally killed" her son and that "[t]he killing was done with premeditation." Footnotes appended to instruction No. 2 elaborated on the meaning of "intentionally" and "premeditation":
"A defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the state, or cause the result complained about by the state."
"Premeditation means to have thought the matter over beforehand, in other words, to have formed the design or intent to kill before the act. Although there is no specific time period required for premedi[t]ation, the concept of premeditation requires more than the instantaneous, intentional act of taking another's life."
Instruction No. 2 did not tell the jury that intention was the only culpable mental state at issue in this case. I am convinced it unavoidably implied the opposite.
The only other instruction mentioning culpable mental state was instruction No. 7, which told the jury that Blansett would be committed to the State Security Hospital if found not guilty "solely because the defendant, at the time of the alleged crime, was suffering from a mental disease or defect which rendered the defendant incapable of possessing the required culpable mental state." Again, **419 this instruction did not eliminate premeditation as a culpable mental state Blansett's jury must reckon with.
The situation changed when the judge responded to the jury's mid-deliberation question, however. It was then that legal error arose, when jurors were told unequivocally that intention was the only culpable mental state that mattered for first-degree premeditated murder. Once that response went to the jury, the "only" language in instruction No. 6 became the problem Blansett and her appellate counsel describe. With a narrow definition of culpable mental state supplied, it prevented the jury from considering Blansett's undisputed contemporaneous psychosis as competition for the State's evidence of her actions from which the jury might infer the existence of premeditation.
Although Blansett faces a high burden on reversibility under the clearly erroneous framework, the significance of the error described above is hard to overestimate. It eliminated Blansett's only promising defense, a mental disease or defect so grave and disorienting that it may have compelled her to kill her 10-year-old son while she was in what she and her expert described as a fit of paranoid and sudden panic. I would therefore reverse her conviction for first-degree premeditated murder, vacate her sentence, and remand this case to the district court for further proceedings. I am firmly convinced that a jury-correctly rather than incorrectly guided by the trial judge-would have reached a different verdict, one that took all *1149 of the evidence from these devastating events into account.